**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

YAW S. OBENG,
      Appellant,

      v.

DEPARTMENT OF COMMERCE,
      Agency.

DOCKET NUMBER
DC-0752-20-0124-I-1

DATE: July 18, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Charles W. Day, Jr., Esquire, Rockville, Maryland, for the appellant.

Ashley Geisendorfer, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which sustained the charge of failure to follow safety procedures but mitigated the demotion penalty to a 30-day suspension. Generally, we grant petitions such as these only in the following

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review.  Therefore, we DENY the petition for review and the cross petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      The appellant was previously employed as ZP-V Research Scientist with the agency.  Initial Appeal File (IAF), Tab 5 at 87.  By a letter dated November 14, 2018, the agency proposed to demote the appellant (with a resulting loss in pay) from the ZP-V pay band to a ZP-IV Research Chemist position, based on the charge of failure to follow safety procedures with a single specification.  *Id.* at 146-53.  In the narrative description under the charge, the agency alleged that the appellant accessed a laboratory at his place of employment, the National Institute of Standards and Technology (NIST), without authorization, and completed a procedure cleaning a silicon wafer with hydrofluoric acid (HF) without obtaining necessary permission or approval, and without using proper required personal protective equipment (PPE).  *Id*. at 149-50.  The appellant provided a written reply and an oral response to the proposal, as well as a supplemental written reply.  *Id.* at 98, 100-38, 140-44.  After considering the

appellant's replies, the deciding official issued a decision letter sustaining the charge and the demotion penalty. *Id.* at 89-96.

¶3     The appellant subsequently filed a formal equal employment opportunity (EEO) complaint alleging that the agency discriminated against him on the basis of race (Black), national origin (Ghana), and age (61 years of age) when it demoted him. *Id.* at 33-38. The agency issued a final agency decision (FAD) finding no discrimination and provided the appellant with Board appeal rights for his mixed-case complaint.[2] *Id.* at 40-85. The appellant timely filed the instant Board appeal challenging his demotion and reduction in pay, arguing that the charge was unsupported, and that the penalty was unreasonable and the deciding official failed to properly apply the *Douglas*[3] factors in making his penalty determination. IAF, Tab 1 at 1-5. The appellant also raised affirmative defenses of discrimination based on his race, national origin, and age. *Id.* at 5. After holding the appellant's requested hearing, *see* IAF, Tab 21, Hearing Compact Disc (HCD), the administrative judge issued an initial decision that sustained the charge of failure to follow safety procedures and found nexus between the charge and the efficiency of the service, but mitigated the demotion penalty to a 30-day suspension as the maximum reasonable penalty, IAF, Tab 22, Initial Decision (ID) at 9-19. The administrative judge also concluded that the appellant failed to establish any of his affirmative defenses. ID at 20-26.

---

[2] A "mixed-case" complaint is a complaint of employment discrimination filed with a Federal agency relating to or stemming from an action that can be appealed to the Board. *Moore v. Department of Justice*, 112 M.S.P.R. 382, ¶ 4 n.4 (2009); 29 C.F.R. § 1614.302(a)(1). The appellant's case was a mixed-case because, at the time the agency issued the FAD, he had been issued a letter of decision on the demotion and loss of pay that was appealable to the Board.

[3] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of 12 relevant factors to be considered in determining the appropriateness of an imposed penalty.

¶4      The agency has filed a petition for review of the initial decision, arguing that the administrative judge misapplied the law to the facts, made erroneous credibility determinations, and abused her discretion by mitigating the agency's chosen penalty.[4]  Petition for Review (PFR) File, Tab 1.  The appellant has filed a response to the petition for review and a cross petition for review.[5]  PFR File, Tab 3.  The agency has filed a reply to the response and the cross petition for review.  PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5      On review, the agency argues that the administrative judge erred by failing to identify all of the material issues of fact and by failing to resolve necessary credibility disputes.  PFR File, Tab 1 at 19-22.  The agency also argues that the

---

[4] With its petition for review, the agency submitted a certification of its compliance with the interim relief order and provided evidence demonstrating that it has complied with the administrative judge's interim relief order, which the appellant does not challenge on review.  Petition for Review (PFR) File, Tab 1 at 34-39; *see* 5 C.F.R. § 1201.116(a).

[5] The appellant was required to file a response to the petition for review and a cross petition for review by Sunday, July 19, 2020.  PFR File, Tab 2 at 1.  Where, as here, the deadline falls on a weekend, the filing deadline is extended to the next business day. 5 C.F.R. § 1201.23.  Thus, the appellant's submission was due on Monday, July 20, 2020.  The appellant's first response/cross petition for review was electronically filed at 11:56 p.m. Eastern Standard Time (EST) on July 20, 2020, and a substantially similar second response with a number of formatting and spelling error corrections was electronically filed at 12:48 a.m. EST on July 21, 2020.  *See* PFR File, Tabs 3-4.  The appellant asserted that the first filing was erroneously submitted due to a "synchronization conflict on Microsoft SharePoint," and requests that the second filing be accepted into the record.  PFR File, Tab 4 at 3.  The agency argues that the changes made in the latter filing were "extensive" and went "beyond correcting mere formatting" issues, and requests that the latter submission be rejected as untimely filed without good cause shown for the delay.  PFR File, Tab 6 at 5.  We have reviewed both filings, and aside from the nominal number of misspelling corrections, word substitutions, and general formatting changes the agency identified, the two filings were otherwise functionally the same in terms of both structure and content.  Nevertheless, we have not considered the appellant's second filing, and our decision here is based exclusively on the first, timely filed response in opposition to the petition for review and cross petition for review.

administrative judge abused her discretion when she mitigated the agency's chosen penalty, by reweighing the *Douglas* factors and by substituting her judgment for that of the deciding official. *Id.* at 23-32.

<u>The administrative judge made reasoned findings of fact and credibility-based determinations.</u>

¶6    Regarding its argument that the administrative judge failed to identify all material issues of fact, the agency points to a footnote in the initial decision stating that, based on the appellant's admission that he entered the HF lab and cleaned silicon wafers without authorization and without using required PPE, the administrative judge found that to be "a sufficient basis for finding that [the appellant] engaged in the charged misconduct," and so she found it unnecessary to further discuss the specific evidence supporting the charge. PFR File, Tab 1 at 19; *see* ID at 10 n.1. The agency argues that in concluding that the charge was proven based on the appellant's admission, the administrative judge failed to resolve the significant discrepancies between the testimony from the appellant and the agency witnesses concerning how far the students accompanying the appellant in the lab stood from the appellant, how the fume hood sash was arranged, whether the appellant had received permission to use the HF lab, whether he had regularly worked in the HF lab on previous occasions, and whether his use of safety equipment was superior to that mandated by the lab's standard operating procedures (SOPs), among other things. PFR File, Tab 1 at 19-21. The agency also argues that the administrative judge failed to make explicit credibility findings pursuant to the Board's decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), and improperly credited the appellant's version of events with respect to some of these factual disputes. *Id.* at 21-22; PFR File, Tab 6 at 9-10, 15-17. The agency asserts that the failure to resolve these disputed issues constituted reversible error, citing the Board's decision in *George v. Department of the Air Force*, 24 M.S.P.R. 269, 270-71 (1984), for support. PFR File, Tab 1 at 19, 22, Tab 6 at 6-7, 15-17.

¶7       In response, the appellant argues that the administrative judge correctly considered all material facts and made reasoned credibility determinations necessary to resolve the appeal. PFR File, Tab 3 at 5-10. The appellant argues that the agency overstates the importance of the cited footnote, observing that the administrative judge merely concluded that based on the appellant's admission, no further evidentiary determinations were necessary concerning the issue of whether the narrative charge had been proven, but that the administrative judge made clear that she reviewed "all relevant evidence to include testimony and admitted exhibits" in reaching her determination. *Id.* at 6-7; *see* ID at 10 n.1. The appellant asserts that the administrative judge properly made credibility findings in resolving the relevant disputed testimony, but that contrary to the agency's assertion otherwise, it was not necessary for the administrative judge to resolve "the details of every instance of disputed testimony" in order to determine that the agency proved the charge. PFR File, Tab 3 at 7-9. He also disputes the agency's assertion that the administrative judge improperly credited the appellant's testimony over that of agency officials on disputed issues. *Id.* at 9-10.

¶8       We agree with the appellant that the administrative judge properly considered the relevant evidence in making her determinations. As the appellant correctly notes, it was not necessary for the administrative judge to resolve the dispute concerning issues such as the position of the fume hood, the relative distance of the students observing the appellant, and the other factors identified by the agency in order to determine whether the misconduct as described in the proposal occurred as charged. When an agency relies upon a generic charge of misconduct and an accompanying narrative specification supporting its charge, the agency is required to prove only the essence of the charge, not every single fact alleged, in order to sustain the charge. *See Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995) (Table). As described in the proposal, the agency charged the appellant with the following: (1) accessing a NIST laboratory without authorization; (2) engaging

in the activity of cleaning a silicon wafer using HF; (3) without obtaining necessary authorization and approval; and (4) without using the proper PPE required by the SOP. IAF, Tab 5 at 149-50. The administrative judge concluded that the agency proved each of these aspects of the charge based on the appellant's admission to each of these facts at his oral response to the proposal, in his supplemental written response, and at the hearing. IAF, Tab 5 at 98, 100-38; HCD (testimony of appellant); *see* ID at 9-10.

¶9        The administrative judge then turned to a detailed penalty analysis discussion to address the remaining disputed issues regarding the seriousness and severity of the appellant's misconduct, whether he was on notice that he was engaging in misconduct, and other mitigating or aggravating factors related to the appellant's misconduct that would bear on the appropriate penalty. ID at 12-19. However, for the purpose of determining whether the agency proved the charge as described in the proposal, the administrative judge properly considered and summarized the relevant evidence in the record and made appropriate findings. As the appellant correctly notes, the fact that the administrative judge did not painstakingly recount all of the material facts and all of the evidence in the record supporting the agency's charge in reaching her determination that the agency proved the misconduct as alleged does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table); *see* PFR File, Tab 3 at 6-7.

¶10       With respect to the Board's decision in *George* cited by the agency, that decision is inapposite and distinguishable. PFR File, Tab 1 at 19, 22, Tab 6 at 6-7, 15-17. In concluding that the agency failed to show that the proposed discipline would promote the efficiency of the service in *George*, the administrative judge in that case failed to analyze whether the charged conduct had, in fact, even occurred. *George*, 24 M.S.P.R. at 270. Here, by contrast, the administrative judge specifically determined that the misconduct occurred based

on the appellant's admission that it did, and that alone was sufficient to support the administrative judge's finding that the charge was proven.

¶11    Regarding the agency's argument that the administrative judge "apparently credited" the appellant's testimony on disputed issues, such as his claim that he was trying to improve the SOP or that the fume hood was configured in the manner he described and similar such issues, and failed to credit contrary testimony by agency witnesses concerning these points, there is also no merit to this assertion. PFR File, Tab 1 at 21-22. Because the administrative judge held a hearing, her credibility determinations were implicitly based on witness demeanor. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *see Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 13 (2015) (noting that an administrative judge's credibility determinations are "virtually unreviewable"), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016). In the initial decision, the administrative judge made clear that she relied on the factors identified by the Board in *Hillen* for resolving credibility-based disputes, to the extent they existed and were relevant to her determinations.[6] *See* ID at 23 (citing *Hillen*, 35 M.S.P.R. at 458).

---

[6] Indeed, the administrative judge explicitly noted that she credited the deciding official's testimony in analyzing the appellant's discrimination affirmative defense claims, citing the appropriate *Hillen* factors, but noted that her decision to mitigate the demotion penalty was not based on the deciding official's lack of credibility. *See* ID at 23 (citing the *Hillen* factors related to the deciding official's demeanor, prior consistent statements, and lack of bias in crediting his testimony). Additionally, she explicitly declined to credit the appellant's testimony that he believed he was "grandfathered" into using the HF lab and therefore lacked notice of his misconduct. *See* ID at 16 (rejecting the appellant's arguments regarding lack of notice).

¶12       With respect to the agency's specific objections, the administrative judge identified the appellant's statement that he deviated from the SOP in order to make the safety requirements "more rigorous," first, in analyzing whether he had notice that his actions were contrary to the agency's established rules and guidance, and second, in identifying his testimony at the hearing that he later came to understand that he could not deviate from the established SOP. ID at 15-16, 19. In neither instance did the administrative judge credit these statements as true or as confirming that the appellant had, in fact, improved the established safety protocols, but she instead cited them to show that there was a shift in the appellant's demeanor before and after the oral response to the proposed demotion, after he reviewed his lab authorizations and contemplated his conduct and began to fully understand the seriousness of his misconduct. *See* ID at 5, 18-19.

¶13       Regarding the agency's claim that the administrative judge apparently credited the appellant's testimony that he had the fume hood positioned in the manner he described, there is also no support for this assertion. PFR File, Tab 1 at 21. The administrative judge did not make any findings at all about the positioning of the fume hood in the initial decision because, as discussed above, such a finding was not necessary to her determination that the charged misconduct occurred, and the agency fails to identify where in the decision the administrative judge purportedly made any such finding. Accordingly, we conclude that the administrative judge properly considered the relevant evidence in making her findings of fact and made reasoned credibility determinations, and we see no reason to disturb those findings on review. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 9 (2016) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (same).

<u>The administrative judge did not abuse her discretion by mitigating the demotion penalty to a 30-day suspension.</u>

¶14     On review, the agency argues that given the administrative judge's finding that the deciding official provided a "thorough *Douglas* factor analysis," she abused her discretion by failing to give deference to the agency's penalty determination when she reweighed the *Douglas* factors and substituted her own judgement for that of the agency. PFR File, Tab 1 at 22-32; Tab 6 at 13-15; *see Douglas*, 5 M.S.P.R. at 305-06. Specifically, with respect to the appellant's potential for rehabilitation, the agency argues that the administrative judge erroneously rejected the deciding official's conclusion that the appellant's "continued rationalizations" and his failure to fully apologize for his misconduct and acknowledge wrongdoing indicated that he had little potential for rehabilitation. PFR File, Tab 1 at 23-28; Tab 6 at 10. To support its position, the agency cites a number of Board decisions it argues demonstrate that the Board will reverse an administrative judge's penalty mitigation determination where she rejected the deciding official's *Douglas* factor analysis and instead independently reweighed the mitigating and aggravating factors. *See* PFR File, Tab 1 at 26-28; Tab 6 at 12-14.

¶15     The agency also disputes the administrative judge's finding that the appellant showed contrition and acknowledged his misconduct during the course of the disciplinary process, and argues that this finding was in tension with the deciding official's testimony at the hearing that he was not satisfied with the appellant's apology or convinced that the appellant understood the severity of his misconduct. PFR File, Tab 1 at 27-31; *see* ID at 14. To that end, the agency highlights the fact that the appellant failed to specifically note that two students were present while he was improperly using HF in his post-oral reply supplemental statement, and that during his deposition and at the hearing, he continued to take the position that he could deviate from the SOP and that his procedure for handling HF was sufficiently safe. PFR File, Tab 1 at 27-31; Tab 6

at 11-12. The agency argues that as a result of these erroneous findings, the administrative judge improperly concluded that the appellant's misconduct constituted a "technical violation," and not an intentional one, and thus warranted a reduced penalty. PFR File, Tab 1 at 22-25, 28-31 (citing *Oddo v. Department of the Treasury*, 13 M.S.P.R. 483 (1982)). Finally, the agency argues that the penalty of removal was within the bounds of reasonableness and so the penalty should have been upheld. PFR File, Tab 1 at 25-29, Tab 6 at 6-7, 13-15.

¶16      When the Board sustains all of the charges, it will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 20 (2001). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency, recognizing that its function is not to displace management's responsibility or to decide what penalty it would impose, but to ensure that management judgment has been properly exercised and that the penalty selected does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.* The Board will correct the agency's penalty when all of the charges are sustained only to the extent necessary to bring it to the maximum penalty or the outermost boundary of the range of reasonable penalties. *Id.*

¶17      Nevertheless, the ultimate burden is on the agency to persuade the Board of the appropriateness of the penalty imposed. *Douglas*, 5 M.S.P.R. at 307. Although management officials are afforded significant deference in their penalty determinations, "[t]he deference to which the agency's managerial discretion may entitle its choice of penalty cannot have the effect of shifting to the appellant the

burden of proving that the penalty is unlawful, when it is the agency's obligation to present all evidence necessary to support each element of its decision." *Id.*

¶18 In mitigating the agency's chosen penalty, the administrative judge reviewed the deciding official's *Douglas* factor analysis and concluded that he failed to properly consider all of the evidence relevant to a number of those factors. ID at 12-19. Although the agency argues that this constituted an unwarranted reweighing of the *Douglas* factors, the administrative judge instead identified specific relevant information that the deciding official either failed to consider or inappropriately discounted in conducting his *Douglas* factor analysis.

¶19 For example, regarding the first *Douglas* factor, which concerns the nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, was committed maliciously or for gain, or was frequently repeated, the administrative judge agreed with the deciding official's conclusion that the appellant's violation was serious, but rejected his implicit conclusion that the appellant's misconduct was intentional, finding instead that it was a mere oversight or error in judgment that was unlikely to be repeated in the future. ID at 12-13, 15; *see* IAF, Tab 5 at 91. On review, the agency doubles down on its assertion, arguing that the appellant's misconduct was "intentional" or "willful," in contrast to that of the employee in the Board case cited by the appellant where the penalty was mitigated. *See* PFR File, Tab 1 at 21, 28-31, Tab 6 at 14-15.

¶20 Despite the agency's assertion otherwise, the record supports the administrative judge's conclusion that the appellant's safety violation was attributable to his mistaken belief that he could access the HF lab and that his choice of PPE equipment was appropriate, and the deciding official failed to adequately consider these facts and instead misconstrued the appellant's explanation for why he held his mistaken belief as post-hoc rationalizations for his action. *See* ID at 14-15. Specifically, in his oral reply, the appellant acknowledged that at the time he accessed the HF lab, he believed that he had

been "grandfathered" into using the lab, but that after he reviewed the Hazard Review materials for the lab, he understood that he was not authorized to perform certain activities in certain labs. IAF, Tab 5 at 111-13. The appellant later made clear that he understood that this prior belief was mistaken, noting that he "fully admit[ted]" that he made a mistake, that he was "not trying to justify the mistake," and that he was embarrassed by his oversight because he prided himself as "mister safety." *Id.* at 122. To further drive the point home, the appellant later repeated that he was "willing—again repeat I'm willing to admit the mistakes that I've made," restated that he was not attempting to justify his mistakes, that he "made mistakes . . . I made a mistake, period," and that "[m]istakes were made based on me making assumptions." *Id.* at 124-25.

¶21     Seemingly recognizing the appellant's acknowledgment that his actions were the result of a mistake, the deciding official offered the appellant the opportunity to supplement his oral response with a "very short concise statement accepting responsibility for what happened," and stated that he would consider reducing the penalty to a 30-day suspension. *Id.* at 119-20, 128-29, 132-33. The appellant agreed to do so and later produced the requested brief statement, in which he once again stated that he entered the HF lab without authorization, that he deviated from the lab's required SOP, and that those actions "were mistakes" and he "took responsibility for them." *Id.* at 98. Accordingly, we agree with the administrative judge's finding that the appellant's misconduct was not an intentional violation of the agency's safety rules, but instead was an oversight based on his admittedly mistaken belief about the propriety of his actions, and that the deciding official failed to adequately account for this fact in considering the nature and seriousness of the misconduct, particularly with respect to whether the appellant's misconduct was intentional or technical or inadvertent. *See* ID at 13; *Douglas*, 5 M.S.P.R. at 332.

¶22     Similarly, the agency challenges the administrative judge's conclusion that the appellant demonstrated clear potential for rehabilitation and that the deciding

official erred by determining otherwise. PFR File, Tab 1 at 26-29; Tab 6 at 13-14; *see* ID at 17-19. The agency points to the deciding official's finding that the appellant's acknowledgment that "mistakes were made" in his oral reply understated the severity of his actions and were evidence that he had limited potential for rehabilitation, and the agency argues that the administrative judge erred in concluding otherwise. PFR File, Tab 1 at 26-29, Tab 6 at 13-14; *see* IAF, Tab 5 at 93. The agency argues that the deciding official appropriately concluded that the appellant's insistence on explaining his rationale for why he accessed the HF lab and performed the cleaning activity without the proper PPE was evidence that he did not truly understand the severity of his misconduct and so he had limited rehabilitative potential. PFR File, Tab 1 at 28-31, Tab 6 at 10. The agency also cites a number of Board cases it argues support its position that the Board will reverse an administrative judge's mitigation determination where she disregards the agency's finding that the appellant has little rehabilitative potential. PFR File, Tab 1 at 26-28 (citing *Saiz v. Department of the Navy*, 122 M.S.P.R. 521 (2015); *Balouris v. U.S. Postal Service*, 107 M.S.P.R. 574 (2008) *aff'd*, No. 2008-3147, 2009 WL 405827 (Fed. Cir. Feb. 19, 2009); *Batten v. U.S. Postal Service*, 101 M.S.P.R. 222 (2006), *aff'd*, 208 F. App'x 868 (Fed. Cir. 2006)).

¶23    We agree with the administrative judge's conclusion that the appellant exhibited clear potential for rehabilitation, and that the deciding official erred by disregarding that fact in his penalty analysis. *See* ID at 18; IAF, Tab 5 at 93. As the administrative judge correctly observed, the deciding official's assertion in the decision letter and in testimony at the hearing that there was no evidence of the appellant's potential for rehabilitation was directly at odds with his posture during the appellant's oral reply. *See* ID at 19. Specifically, in addition to the appellant's statements identified above acknowledging that he impermissibly deviated from the SOP when he accessed the lab without using proper PPE, the appellant also made clear that he accepted that he was wrong to deviate from the

SOP, but offered that he was only attempting to improve the procedures to make them more rigorous. IAF, Tab 5 at 117. When pressed by the deciding official regarding whether the appellant fully understood that deviating from a lab's SOP was impermissible even if the intention was to improve the SOP, the appellant reaffirmed that he understood that, and stated that if he had ideas for how to improve an SOP, he should have spoken with the lab overseer about his ideas as opposed to "implementing it on the fly," and stated that he was "profoundly sorry" for not doing so. *Id.* at 118-19. Based on the appellant's responses, the deciding official asked him to prepare the supplemental statement acknowledging that the facts set forth in the proposal letter were met and stated that he would then consider reducing the penalty, mentioning a 30-day unpaid suspension as the potential reduced penalty. *Id.* at 119-20. The deciding official acknowledged that "mistakes are going to happen," but that based on the appellant's first written response to the proposal, he had concerns that the appellant did not appear "contrite" and did not "recognize, acknowledge mistakes that were made." *Id.* at 121, 123-24. To assuage any remaining concerns about his apparent lack of contrition, the appellant once again stated that he was "willing to admit the mistakes [he] made," and clarified that he was not trying to justify his actions. *Id.* at 124. He also expressed surprise about the fact that after he met with the proposing official for the first time to discuss the incident, the language in the resulting proposal suggested that the appellant was "insisting that [he] was right," which was not what the appellant intended to convey, so he acknowledged that he may have "failed to communicate with [the proposing official] properly." *Id.* at 124-25. The appellant then again stated that he was "profoundly sorry," and agreed to supplement his oral testimony with the requested written statement. *Id.* at 126, 128. After the appellant sought clarification on what form the supplemental response should take, the deciding official stated that he wanted a "very short concise statement accepting responsibility for what happened" by email, and the appellant agreed to do so. *Id.* at 132-33.

¶24     As the administrative judge correctly observed, the appellant did exactly as he was asked to do in the supplemental statement. *See* ID at 18. The resulting supplemental statement succinctly memorialized the issues discussed above, with the appellant acknowledging the following: (1) that he entered the HF lab without explicit authorization and training; (2) he deviated from the lab's SOP without authorization from the Principal Investigator (PI) as specified by the Hazard Review protocols; (3) that these were mistakes and he took responsibility for them; and (4) that he apologized for the problems he caused the lab and its management.[7] *Id.* at 98. Although the decision letter acknowledges the fact that the appellant provided a supplemental response, the penalty determination section includes no mention of the supplemental statement, instead selectively drawing language from the appellant's initial written response and oral reply. *See* IAF, Tab 5 at 91-93.

¶25     Further, there is also no merit to the agency's argument that the appellant continued to rationalize his misconduct during his testimony at the hearing,

---

[7] On review, the agency also makes much of the appellant's statement in his supplemental written reply acknowledging that he could not deviate from the HF SOP "without authorization," arguing that because changes to the SOP at issue must be approved by the Director of the Physical Measurement Laboratory, the appellant's added qualifier further demonstrated his lack of rehabilitation and that he did not know the correct procedures. *See* PFR File, Tab 1 at 22 n.10; Tab 6 at 16. The agency's argument is unconvincing. As an initial matter, the agency omits additional qualifying language the appellant included in his supplemental response, stating that he deviated from the SOP "without prior authorization *from the PI as specified by the Hazard Review protocols*." *See* IAF, Tab 5 at 98. Further, in discussing the Hazard Review process and requirements with the appellant during the oral reply, the deciding official noted that the appellant "did not have the freedom" to deviate from the established SOP, but that he could "bring the issue back up to the PI, and the PI can decide that under the right set of circumstances alternatives may be acceptable," and that the Hazard Review policies are set up to "ensure that people do not deviate from agreed training unless agreed upon by line management." IAF, Tab 5 at 117-18; *see* IAF, Tab 14 at 9-10. Consequently, the language the appellant used in his supplemental response stating that deviations from the SOP must be sought in the manner "specified by the Hazard Review protocols" is consistent with the language used by the deciding official and with the requirements identified in the agency's Hazard Review policies.

providing additional evidence of his limited rehabilitative potential. *See* PFR File, Tab 1 at 27-28, 32, Tab 6 at 10. As was the case with the appellant's statements during his oral reply, in his hearing testimony the appellant made clear that his intent in explaining his actions was to identify his motivations at the time he accessed the HF lab and used improper PPE, and was not an effort to defend his actions after the fact. *See* HCD (testimony of the appellant) (stating that he took "full responsibility" for his actions as he understood them at the time in his response to the proposal and that he later "apologized profusely" for his misunderstanding, and answering "zero," and "I'm not going to do that again" in response to a question concerning the likelihood that there would be "any repetition of any conduct" identified in the charge).

¶26        On review, the agency also restates its argument that the appellant's failure to address the fact that students were present demonstrated that he was unwilling to take full responsibility for his misconduct, and points to testimony from the deciding official stating that the students' presence was "extremely problematic" and presumably weighed heavily in his decision finding a lack of rehabilitation. PFR File, Tab 1 at 28-29, Tab 6 at 6-7. However, as the administrative judge correctly noted, while the presence of the students was briefly discussed during the oral reply, *see* IAF, Tab 5 at 129-30, the deciding official did not give any indication that he expected the appellant to specifically mention that fact in his supplemental written apology, and so it was unreasonable for the deciding official to have considered the absence of that acknowledgment as evidence of a lack of rehabilitation, s*ee* ID at 17-18. As previously noted, if a deciding official failed to appropriately consider the relevant *Douglas* factors in making his penalty determination, the Board need not defer to the agency's penalty determination. *Von Muller v. Department of Energy*, 101 M.S.P.R. 91, ¶ 19 (2005), *aff'd*, 204 F. App'x 17 (Fed. Cir. 2006). Additionally, the Board may abandon its deference to an agency's penalty determination where the deciding official misjudged the appellant's rehabilitative potential. *See id.*, ¶ 21; *Watkins v. Department of the*

*Navy*, 29 M.S.P.R. 146, 148 (1985) (declining to credit a supervisor's assertion that he lost confidence in the appellant, instead concluding that the appellant exhibited good potential for rehabilitation). For the foregoing reasons, we agree with the administrative judge's conclusion that the appellant repeatedly took responsibility for his misconduct and exhibited clear rehabilitation, and it is clear from the record that the agency failed to properly consider the appellant's rehabilitative potential in making its penalty determination. *See Wentz v. U.S. Postal Service*, 91 M.S.P.R. 176, ¶¶ 24-25 (2002) (mitigating a penalty, based in part on disagreement with the deciding official's conclusion that appellant lacked potential for rehabilitation).

¶27    Another of the factors to be considered in determining the propriety of a penalty is the consistency of the penalty with the agency's table of penalties. *Douglas*, 5 M.S.P.R. at 305; *see Peterson v. Department of Transportation*, 54 M.S.P.R. 178, 184 (1992) (consistency of the penalty imposed with the agency's table of penalties is a relevant factor in determining the reasonableness of the penalty). Where the agency has a table of penalties, the Board will adhere to the guidelines in the table unless a deviation from the suggested penalty is warranted under the circumstances. *Goode v. Defense Logistics Agency*, 45 M.S.P.R. 671, 676 (1990). The Board has long held that the agency's table of penalties should not be applied so inflexibly as to impair consideration of other factors relevant to the individual case. *Douglas*, 5 M.S.P.R. at 307. Deviation from the table is permissible where the circumstances of the case so justify. *Zazueta v. Department of Justice*, 94 M.S.P.R. 493, ¶ 8 (2003), *aff'd*, 104 F. App'x 166 (Fed. Cir. 2004).

¶28    Nevertheless, if the agency deviates from its guidelines in its table of penalties, it must establish that the more severe penalty is within the bounds of reasonableness. *Basquez v. Department of the Air Force*, 48 M.S.P.R. 215, 218 (1991). If the agency cannot justify the deviation, it has abused its discretion. *Williams v. Department of the Air Force*, 32 M.S.P.R. 347, 349 (1987)

(concluding that where the agency has a table of penalties, it must adhere to the guidelines in the table unless it can show that a deviation from the suggested penalty is justified by the circumstances of the case); *Stead v. Department of the Army*, 27 M.S.P.R. 630, 634 (1985).  Indeed, a penalty grossly exceeding that provided by an agency's standard table of penalties, for that reason alone, may be arbitrary and capricious, even where such a table provides only suggested guidelines.  *Douglas*, 5 M.S.P.R. at 307 n.71; *cf.* IAF, Tab 5 at 196 (noting that the agency's table of penalties in this case are "guidelines only and are not mandatory").

¶29        The agency's table of penalties identifies a penalty range of an oral admonishment to a 3-day suspension for a first offense of the most closely analogous charge to the sustained charge, a "violation of safety regulations, instructions, or prescribed safe practices."  *See* IAF, Tab 5 at 201.  Aside from generally stating on review that the demotion penalty was the "only reasonable" or "lowest possible" penalty available under the circumstances, the agency does not offer any specific argument explaining why such a significant departure from the penalty range was justified.  *See* PFR File, Tab 1 at 32, Tab 6 at 7.

¶30        Conversely, the Board has sustained decisions mitigating a removal to an unpaid suspension for a first offense of a safety-related violation in circumstances similar to those in this case, even on occasions where the appellant's misconduct potentially endangered himself or others.  *See, e.g.*, *Wentz*, 91 M.S.P.R. 176, ¶¶ 15-25 (concluding that a 5-day suspension, rather than removal, was the maximum reasonable penalty for the sustained sole charge of "unsatisfactory performance/failure to perform the duties of your position in a safe manner" based on a motor vehicle accident, where the appellant had several mitigating factors including 13 years of discipline-free Federal service, he was under the influence of prescription medication that played a part in the misconduct, and other employees were treated much less harshly for similar safety violations); *Williams v. Department of the Navy*, 38 M.S.P.R. 387, 390-91 (1988) (mitigating

a removal penalty to a 30-day suspension for a first offense of "failure to observe precautions for personal safety, posted rules, signs, written or oral safety instructions, or to use protective clothing or equipment," where the appellant violated medical restrictions mandating his use of a cane and endangered his own safety, and where the agency's table of penalties identified a penalty range of a reprimand to 2-day suspension for a first offense); *Watkins*, 29 M.S.P.R. at 147-48 (mitigating a removal penalty to a 60-day suspension for a first offense of "endangering the safety personnel through carelessness" when the appellant exposed himself and a subordinate to X-ray radiation, despite the seriousness of the offense, the fact the appellant's supervisor stated that he had lost confidence in that appellant and declined to mitigate the penalty based on that loss of confidence, and the fact that the appellant was in charge and therefore was held to a higher standard, where the violation was the appellant's first offense in an otherwise spotless 25-year work and safety record, and the appellant's potential for rehabilitation was good).

¶31        Further, as the administrative judge correctly noted, the agency could have charged the appellant with a charge of "conduct demonstrating untrustworthiness or unreliability," for which the demotion penalty would have been more in line with the agency's table of penalties, and it is clear from the record that agency officials specifically contemplated doing so but ultimately chose not to. *See* IAF, Tab 5 at 203, Tab 16 at 63-64; HCD (testimony of proposing official); ID at 16. The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency, and the Board will not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989). For the foregoing reasons, we agree with the administrative judge's conclusion that the demotion penalty significantly exceeds the 3-day suspension maximum penalty provided by the agency's table of penalties, the agency failed to adequately justify such a significant departure from the its table of penalties, and that a 30-day suspension

is the maximum reasonable penalty based on the facts of this case. *See* ID at 16, 19.

The administrative judge correctly concluded that the appellant failed to establish his affirmative defenses.

¶32    The appellant has also filed a cross petition for review challenging the administrative judge's finding that he failed to establish his affirmative defenses of discrimination based on his race, national origin, and age. PFR File, Tab 3 at 17-18; *see* ID at 20-26. Specifically, the appellant argues that the administrative judge erred by concluding that his white co-worker was not a valid comparator, despite the fact that the deciding official had ultimate supervisory authority over both the appellant and the co-worker, and the co-worker's misconduct was more egregious but he did not receive any disciplinary action. PFR File, Tab 3 at 17-18. In response, the agency argues that the administrative judge did not err in determining that the co-worker was not a valid comparator, highlighting the administrative judge's finding that the purported comparator was in the ZP-IV pay band while the appellant was a ZP-V, the co-worker was already subject to additional oversight at the time the agency considered discipline, and the comparator immediately took responsibility for his misconduct and self-reported his safety violation while the appellant did not. PFR File, Tab 6 at 17-18.

¶33    In the initial decision, the administrative judge determined that the appellant failed to establish by preponderant evidence that race, national origin, or age discrimination was a factor in the agency's demotion decision. *See* ID at 20-26. In reaching that determination, she thoroughly reviewed the record and testimonial evidence and concluded that the appellant did not provide any direct or circumstantial evidence of discrimination, any evidence of suspicious timing, ambiguous oral or written statements, behavior or comments directed at employees in the appellant's protected groups, or any other evidence that could establish an inference of discriminatory intent. ID at 22-26. Regarding the

appellant's purported comparator employee, as the administrative judge correctly noted, the Board has held that for other employees to be deemed similarly situated for purposes of a discrimination affirmative defense claim, comparators must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶ 44 (2010) (citing *Adams v. Department of Labor*, 112 M.S.P.R. 288, ¶ 13 (2009); *Spahn v. Department of Justice*, 93 M.S.P.R. 195, ¶ 13 (2003)).

¶34        As the administrative judge correctly concluded, the proposed comparator identified by the appellant is not an appropriate comparator because he was in a lower pay band than the appellant (and thus had a lower level of independence), did not report to the same supervisor, and made an immediate effort to report and acknowledge his misconduct. *See* ID at 25-26. Accordingly, we agree with the administrative judge that the identified co-worker was not an appropriate comparator, and we also agree with her conclusion that there is no evidence in the record showing that the appellant's race, national origin, or age played any role in the demotion decision. *See* ID at 22-26. Accordingly, we find that the administrative judge properly found that the appellant failed to prove any of his discrimination affirmative defenses.[8] ID at 22-23. For the foregoing reasons, we deny the petition for review and cross petition for review and affirm the initial decision, which sustained the charge of failure to follow safety procedures but mitigated the demotion penalty to a 30-day suspension.

---

[8] Because we discern no error with the administrative judge's motivating factor analysis or conclusion regarding these claims, we do not reach the question of whether discrimination was a "but for" cause of the removal action. *See Pridgen v. Office of Management and Budget,* 2022 MSPB 31.

**ORDER**

¶35       We ORDER the agency to CANCEL the appellant's demotion effective March 3, 2019, and substitute in its place a 30-day suspension without pay. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶36       We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶37       We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶38       No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶39       For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives this decision</u>. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[10]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                           /s/ for
                              _____
                              Jennifer Everling
                              Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

   a.      Employee name and social security number.
   b.      Detailed explanation of request.
   c.      Valid agency accounting.
   d.      Authorized signature (Table 63).
   e.      If interest is to be included.
   f.      Check mailing address.
   g.      Indicate if case is prior to conversion.  Computations must be attached.
   h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.      Must provide same data as in 2, a-g above.
   b.      Prior to conversion computation must be provided.
   c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.